PATRICK J. O'CONNELL, PROSECUTOR, v. CITY OF BAY-
ONNE, ROBERT J. TALBOT ET AL., RESPONDENTS.

Submitted May 14, 1926—Decided September 30, 1926.

1. The Commission Government act (*Pamph. L.* 1911, *p.* 462, as
   amended by *Pamph. L.* 1915—at *p.* 496), provides that the desig-
   nation of the several city commissioners "may be changed when-
   ever it appears that the public service would be benefited thereby."
   *Held,* that this provision applies both to cities having three com-
   missioners and to cities having a board of five commissioners.
2. The power given to the board, of transferring commissioners from
   one department to the other, so far as it exists, is a legislative
   and not a judicial one, and its exercise in the present case is an
   act which this court should not disturb on *certiorari.*
3. Laches and acquiescence considered, in the present case, to bar
   relief.

On *certiorari.*

Before Justices PARKER, BLACK and CAMPBELL.

For the prosecutor, *Patrick J. O'Connell, pro se.*

For the respondents, *James Benny.*

The opinion of the court was delivered by

PARKER, J. This writ brings up a group of resolutions
adopted on October 7th, 1924, by a majority vote of the
board of commissioners of Bayonne, whose municipal govern-
ment is organized under the Walsh act of 1911 (*Pamph. L.,
p.* 462) and its supplements and amendments, especially the
amendment of 1915. *Pamph. L., p.* 494 *et seq.* The resolu-
tions need not be quoted at length; they purport to direct
the transfer of the prosecutor from his previous assignment
as commissioner of public safety to the commissionership of
parks and public property, and Commissioner Daly from the
latter to the former office.

It is argued for the prosecutor—(1) that the resolutions
were without legal warrant; (2) that such change is author-

ized only when "it appears that the public service would be benefited thereby" (*Pamph. L.* 1915, *p.* 496), and that, in fact, the public service was not so benefited; (3) that the resolutions were purely for political ends; (4) that the statutory authority to transfer applies only to cities with a board of three commissioners. Other points are stated, but except as undertaking to meet the defenses of laches and acquiescence, hereafter discussed, they are all comprised in the above.

Taking up points numbered one and four: The statutory authority in general terms seems clear, and applies to cities of either three or five commissioners, except, that the mayor, *qua* mayor, and director of the department of public affairs may not be transferred. *Woolley* v. *Flock,* 92 *N. J. L.* 65; *Hendee* v. *Wildwood,* 96 *Id.* 286, in the Court of Errors and Appeals. In the latter case it was held that the statutory provisions on this subject applied to cities either of three or five commissioners. *Oliver* v. *Daly,* 131 *Atl. Rep.* 678; 4 *N. J. Mis. R.* 80, is cited to the contrary; but the question in that case was the alleged arbitrary alteration in the powers and duties of the several commissionerships, and not the transfer of the individual commissioners; and, hence, the remark about turning a commissioner out of his department must be read in the light of the case presented.

Points numbered two and three may conveniently be considered together. The argument is that it is made to appear not that the public service would be benefited by the transfer, but the contrary, and that the motive of the majority was not the public welfare but mere political advantage.

In answer to this it should be sufficient to point out that as in the case of *Moore* v. *Haddonfield,* 62 *N. J. L.* 386, cited for defendants, the power conferred by the statute in the aspects now under examination is legislative and not judicial, and to quote the concluding paragraph of the opinion of the Court of Errors and Appeals in that case:

"It remains to say a word upon that view of the case which assumes that it is within the judicial province to protect constituencies from the recreancy of their representatives by undoing legislation that evinces bad faith. To which

the answer is—*first,* that the power so to intervene has wisely been withheld from the judiciary; *secondly,* that if the power existed, its exercise would be most mischievous, and, lastly, that the redress of the betrayed constituent is in his own hands, to be sought at the polls and not in the courts."

There are other reasons which might well be held adequate as supporting a refusal of judicial intervention in the present case. One is the technical one, which it is sufficient for present purposes to mention without stressing it, that this is a contest over a public office, the prosecutor having been ejected from the office of director of public safety and seeking to regain it, and that, consequently, the proper remedy is an action of *quo warranto;* a second is, that he is quite clearly shown by the evidence to have acquiesced over a period of some months in his new assignment, performing its duties and assuming its responsibilities without apparent complaint, and a third, germane to the second, is that by such acquiescence and the long delay, he is in laches, and, therefore, not entitled to relief here.

For all these reasons we conclude that the writ of *certiorari* should be dismissed, with costs.